IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Christopher J. Cullins, | ) | |
| | ) | Civil Action No. 8:10-264-RMG-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Sumter City Police Department, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Plaintiff, proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the Defendants' Motions for Summary Judgment. (Dkt. # 27, 42 and 48.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The Plaintiff brought this action on February 4, 2010, seeking damages for alleged civil rights violations. On May 24, 2010, the Defendant C. Kelly Jackson filed a motion for summary judgment. (Dkt. # 27.) On June 17, 2010, the Defendants W. Jason Corbett and W. Mattison Gamble filed a separate motion for summary judgment. (Dkt. # 42.)[1] On June 22, 2010, Defendants Paty Patterson, William Lyons, Tod Sims, Curtis Hodge, Dean Plute,

---

[1]The Defendant Gamble's middle name is spelled as Materson or, alternatively, as Mathison on the docket. However, it appears this Defendant's middle name is actually spelled Mattison. (See Dkt. # 48 - Gamble Aff.)

and John Laticker also filed a separate motion for summary judgment. (Dkt. # 48.) Following the filing of each of these motions, on May 24, 2010, June 18, 2010 and June 23, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motions. (Dkt. # 28, 44 and 50.) The Plaintiff filed one response in opposition to the all of the Defendants' Summary Judgment Motions on July 26, 2010. (Dkt. # 57.)

On August 4, 2010, Defendants Corbett and Gamble filed a reply to the Plaintiff's response. (Dkt. # 62.) On August 5, 2010, the Defendant Jackson also filed a reply. (Dkt. # 63.) On August 18, 2010, the Plaintiff filed an objection entitled "Objection to and Motion to Quash Defendant C. Kelly Jackson's Untimely Affidavit and Procedurally Improper Reply Memorandum In Support of Summary Judgment." (Dkt. # 65.) On August 30, the Plaintiff filed a separate response to the motion for summary judgment filed by the Defendants Corbett and Gamble. (Dkt. # 71.) On September 10, 2010, two separate replies were filed by the Defendants. (Dkt. # 76 and 77.)

## FACTS PRESENTED

In his Complaint, the Plaintiff alleges that on November 1, 2007, he was riding with a female passenger, Valerie Cabbagestalk, in Sumter when they passed an unmarked police car traveling in the opposite direction with the Defendants Sumter County Police Officers Lyons, Sims, and Hodge inside. (Compl. Attach. at 8-9.) The Plaintiff alleges he was followed by these officers for over a mile because "he was black in a predominantly

black neighborhood suspected of drug activity by the police and driving a new vehicle. . ." (Compl. Attach. at 10-11.)   He alleges this was racial profiling and that he was stopped without probable cause.  *Id*.  He states that the Defendants' asserted reason for stopping the car, a traffic violation, is false.   (Compl. Attach. at 12.)

The Plaintiff alleges that he asked the officers why he had been stopped, but that the Defendant Lyons' response was to ask the Plaintiff for his paperwork for the truck.  *Id*.  He alleges that before he could answer, the Defendants Lyons and Sims removed Cabbagestalk from the car and began to search it.  *Id*.  He allege the Defendant Hodges then began questioning him about his identification and the ownership of the vehicle.  *Id*.

The Plaintiff alleges he was questioned about the alleged contraband, but that he did not respond. (Compl. Attach. at 14.)   He then alleges that after dispatch relayed that his license had been suspended, he was handcuffed.  (Compl. Attach. at 15.)  The Plaintiff states that the Defendants searched Cabbagestalk's purse and found more contraband, counterfeit checks, which she admitted were hers.  *Id*.   He alleges she also admitted the checks found in the car were hers.  (Compl. Attach. at 15-16.)  The Plaintiff further alleges that an officer from the Sumter City Police Department financial crime unit, the Defendant Plute, arrived on the scene and confirmed that the checks were counterfeit.  (Compl. Attach. at 16.)  The Plaintiff alleges that Cabbagestalk again admitted the checks were hers.  *Id*. The Plaintiff alleges Cabbagestalk was arrested for the checks and he was then told he had committed a traffic violation, an illegal turn.  (Compl. Attach. at 18.)  The Plaintiff alleges he was then arrested for the traffic violation and driving under suspension ("DUS").  *Id*.

3

The Plaintiff also alleges that the stop occurred at North Main and Canal Streets not at Liberty and Washington Streets as the Defendants state in their reports. (Compl. Attach. at 13-14; 17-18; 19.) He also disputes the time of the search, which he alleges took place at 3:00 p.m., prior to his arrest at 3:30 p.m. (Compl. Attach. at 18-19.)

The Plaintiff alleges that at 4:35 p.m. on November 1st after he was released on a personal recognizance bond, he was walking on Wrinkles Road when the Defendants Sims and Plute stopped him and arrested him on a conspiracy charge stemming from the earlier traffic stop without an arrest warrant or probable cause. *Id.* He alleges Sims and Pulte obtained an arrest warrant on November 2, 2007, by relaying incidents regrading the earlier traffic stop. (Compl. Attach. at 23.) He also states that the Defendant Sims requested a high bond for the Plaintiff and falsely stated that the Plaintiff was a flight risk. *Id.* The Plaintiff alleges that, because of Sims' statements, his bond was set at $10,000.

The Plaintiff alleges after being in jail for eight months, he filed a speedy trial motion and that on June 6, 2008, Circuit Court Judge Clifton Newman held that the Defendants had violated the Plaintiff's right to a speedy trial. (Compl. Attach. 28.) He alleges Judge Newman ordered that the Plaintiff be indicted by September 22, 2008, or released on $2,500 bond. (Comp. Attach. 29; 34.) The Plaintiff alleges he was formally indicted on September 11, 2008, but that the indictment was defective. (Compl. Attach. 28-29; 30.) On November 18, 3008, the Plaintiff alleges he was released on a $2,500 bond. (Compl. Attach. at 30.) The Plaintiff alleges that in May 2009, the solicitor "abandoned" the charges against him

4

after nineteen months of imprisonment and confiscation of his property. (Compl. Attach. at

31.)

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved

for summary judgment:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that
> there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate

that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to

summary judgment as a matter of law.  As to the first of these determinations, a fact is

deemed "material" if proof of its existence or nonexistence would affect the disposition of the

case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury

might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine

issue has been raised, the court must construe all interferences and ambiguities against the

movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654,

655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating

to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving

5

party, to survive the motion for summary judgment, may not rest on the allegations averred

in his pleadings.  Rather, the non-moving party must demonstrate that specific, material

facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence

of a mere scintilla of evidence in support of the petitioner's position is insufficient to

withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory

allegations or denials, without more, are insufficient to preclude the granting of the summary

judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.

1985).

## **DISCUSSION**

**Defendants Jackson, Corbett, and Gamble's Motions for Summary Judgment**

The Defendant Solicitor Kelly Jackson has filed a motion arguing he is entitled to

summary judgment based upon the defense of prosecutorial immunity. (Dkt. # 27.)  The

Defendants Assistant Solicitors Corbettt and Gamble filed a separate summary judgment

motion arguing, inter alia, that as assistant solicitors they are also entitled to absolute

immunity.  (Dkt. # 42.)  The undersigned agrees.

Prosecutors have absolute immunity for activities performed as "an officer of the

court" where the conduct at issue was closely associated with the judicial phase of the

criminal process.  *Van de Kamp v. Goldstein*, --- U.S. ----, 129 S.Ct. 855, 860-62, 172

L.Ed.2d 706 (2009).  A prosecutor performs activities as an officer of the court when he

initiates a judicial proceeding, presents evidence in support of a search warrant application,

and conducts a criminal trial, bond hearings, grand jury proceedings, and pre-trial hearings.

6

*Id.* at 861.  *See also Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Dababnah v. Keller-Burnside*, 208 F.3d 467 (4th Cir. 2000).  Here, the Plaintiff's claims against the Solicitor Jackson and Assistant Solicitors Corbett and Gamble involve the prosecution of the Plaintiff's criminal case.  The Plaintiff makes no allegations of any conduct that falls outside the judicial process.  Therefore, the Defendant Solicitor Jackson and the Assistant Solicitors Corbett and Gamble are protected from the Plaintiff's claims for damages by prosecutorial immunity.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding absolute immunity "is an immunity from suit rather than a mere defense to liability").  Accordingly, the Defendants Jackson, Corbett, and Gamble should be granted summary judgment on all of the Plaintiff's claims.[2]

**Defendants Patterson, Lyons, Sims, Hodge, Plute, and Laticker's Motion for Summary Judgment**

The Defendants Patterson, Lyons, Sims, Hodge, Plute, and Laticker filed a separate motion for summary judgment  (Dkt. # 47.)  As discussed below, the undersigned recommends that the Defendants' motion be granted on each of the Plaintiff's claims.

**Racial Discrimination Claims**

The Plaintiff alleges that he was initially stopped because "he was black in a predominantly black neighborhood suspected of drug activity by the police and driving a new vehicle. . ." (Compl. Attach. at 10-11.)   He alleges the Defendants were practicing  racial

---

[2]The undersigned also notes that in his response to the Defendants' Motions for Summary Judgment, the Plaintiff concedes that the Defendant Corbett was not involved in this matter and should be dismissed.  (Dkt. # 57  - Pl.'s Mem. Opp. Summ. J. Mot. at 6.)  Accordingly, if the District Court declines to adopt this recommendation, the Defendant Corbett should still be dismissed.

profiling and that he was stopped without probable cause. *Id.* He states that the Defendant Lyons and Hodge's asserted reason for stopping the car, a traffic violation, is false. (Compl. Attach. at 12.)

"Racial profiling is generally understood to mean the improper use of race as a basis for taking law enforcement action." *Chavez v. Illinois State Police,* 251 F.3d 612, 620 (2001). Allegations of racial discrimination are actionable under § 1983, *see, e.g., Henry v. Van Cleve*, 469 F.2d 687 (5th Cir.1972), but merely conclusory allegations of discrimination are insufficient to state a claim, *Chapman v. Reynolds,* 378 F.Supp. 1137 (W.D.Va.1974). Other than his own speculation, the Plaintiff has not set forth any allegations or additional facts to support this claim of racial profiling. *See Hutchinson v. Dinatale,* 2010 WL 502976, *4 (D.N.J.2010) (holding "[o]ther than minimal facts, all of Plaintiff's allegations are legal conclusions - the arrest was accompanied by an unlawful search, based on racial profiling, and made without probable cause."). Accordingly, the Plaintiff's claim of racial discrimination or racial profiling against the Defendants should be dismissed.

**False Arrest and Malicious Prosecution Claims**

The Plaintiff alleges the Defendants did not have probable cause to arrest him for DUS and that the arrest warrant for the conspiracy charge was illegally obtained.

Turning to the DUS charge first, under the Fourth Amendment, an officer may make a warrantless arrest of an individual in a public place if supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). In assessing the existence of probable cause to make a warrantless arrest, a court is to look at the totality of the circumstances known to the officer at the time of the arrest. *United States v. Al-Talib*, 55 F.3d 923, 931 (4th Cir. 1995). Probable cause exists when the facts and circumstances known to the

officer "would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Garcia,* 848 F.2d 58, 60 (4th Cir. 1988). Probable cause requires only enough evidence to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir.1994) (internal quotation marks omitted). Probable cause must be supported by more than a mere suspicion, but evidence sufficient to convict is not required. *Wong Sun v. United States,* 371 U.S. 471, 479 (1963).

Here, it is undisputed that the Plaintiff was driving and the Plaintiff himself alleges that the dispatcher relayed to the officers that the Plaintiff's license had been suspended. (Comp. Attach. at 14.)[3]  Clearly, under these circumstances the Defendants were warranted in believing that  the Plaintiff had committed an offense and thus had probable cause to arrest the Plaintiff for DUS. The Defendants Patterson, Lyons, Sims, Hodge, Plute and Litaker state that the DUS charge is still pending against the Plaintiff. (Dkt. # 48 - Defs. Mem. Supp. Summ. J. Mot. at 1.) However, the Defendant Gable states the charges were nolle prossed. (Dkt. # 57 - Defs.' Mem. Supp. Summ. J. Mot. at 2.)  Assuming the charges were dismissed, claims of false arrest cannot be premised on this type of hindsight. *See, e.g., Martin v. Rodriguez,* 154 F.Supp.2d 306, 312 (D.Conn. 2001) (holding "[u]ltimate dismissal of the charges against an arrestee does not indicate that the arrest was made without probable cause.").[4]  Rather, probable cause claims are evaluated on

---

[3]In his response to the Defendants' summary judgment motions, the Plaintiff argues that he did not give any identification to the Defendants  "because [he] did not ever in his life own a drivers (sic) license . . . ." (Dkt. # 57 - Pl.'s Mem Opp. Summ. J. Mot. at 10.) Either way, the Plaintiff was driving with a suspended license or without a license, both of which are illegal and would provide probable cause to arrest him.

[4]To the extent that criminal proceedings are still pending against the Plaintiff, absent extraordinary circumstances, federal courts are not authorized to interfere with a State's pending

the basis of what the officer on the scene reasonably perceived and what a reasonable person would think was probable. *See Walczyk v. Rio*, 496 F.3d 139, 156-57 (2d Cir. 2007) ("While probable cause requires more than a mere suspicion of wrongdoing, its focus is on probabilities, not hard certainties. In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.") (citations and quotation marks omitted)

In the context of this §1983 case, the dismissal of the Plaintiff's state criminal charge is simply irrelevant. The Fourth Amendment does not require an arresting officer to be infallible in his assessment of whether a crime has been committed. It simply demands that probable cause support an arrest. Furthermore, claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest. *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir.1995). If probable cause existed for any of the charges made, or if a reasonable police officer could believe probable cause existed, the false arrest claim fails. *Keenan v. Tejeda,* 290 F.3d 252, 262 (5th Cir. 2002). Here, as explained above and in light of the totality of circumstances, the Defendants had probable cause to arrest the Plaintiff for DUS. Accordingly, the Defendants should be granted summary judgment on this claim.

As to the conspiracy charge, following his release from jail on the DUS and traffic violation charges, the Plaintiff was arrested a second time on a conspiracy charge later that same day, and an arrest warrant was obtained the following day on November 2, 2007.

---

criminal proceedings. *Younger v. Harris,* 401 U.S. 37, 44 (1971); *Cinema Blue of Charlotte, Inc. v. Gilchrist,* 887 F.2d 49, 50-53 (4th Cir.1989) (holding federal district courts should abstain from constitutional challenges to state judicial proceedings if the federal claims have been or could be presented in an ongoing state judicial proceeding).

Probable cause was established when these Defendants obtained arrest warrants issued by a neutral, detached magistrate. *See, e.g. Gerstein v. Pugh,* 420 U.S. 103, 113-114 (1975) (holding a warrant is a judicial determination of probable cause); *Baker v. McCollan,* 443 U.S. 137 (1979) (holding the issuance of a facially valid warrant by a magistrate satisfies the probable cause standard). Further, the conspiracy charge was true billed by a grand jury (Compl. Attach. # 13), which is an independent determination that probable cause existed. *Gerstein,* 420 U.S. at 103 n. 19. As a result, any claim for unlawful arrest or unreasonable seizure of the Plaintiff based upon his arrest for the conspiracy offense should fail.

The Plaintiff does not allege any infirmities on the face of the warrant. Rather he alleges it was obtained under false pretenses. First, the Plaintiff has made only conclusory allegations regarding this claim. Additionally, since the Supreme Court's decision in *Briscoe v. LaHue*, 460 U.S. 325 (1983), most circuits have rejected § 1983 claims similar to those made by the Plaintiff, alleging that the defendants who were testifying witnesses were not entitled to absolute immunity because they were engaged in a conspiracy with each other or with the prosecutor to offer perjurious testimony against the plaintiff. *See Franklin v. Terr,* 201 F.3d 1098, 1101-02 (9th Cir.2000) (involving allegation of conspiracy between two testifying witnesses); *Hunt v. Bennett,* 17 F.3d 1263, 1267-68 (10th Cir.1994) (holding prosecutor and police officer witness absolutely immune from claim of conspiracy to present false testimony); *Snelling v. Westhoff*, 972 F.2d 199, 200 (8th Cir.1992) (per curiam) (rejecting conspiracy claim and pointing out that plaintiff's conspiracy allegations were "conclusory"); *McArdle v. Tronetti*, 961 F.2d 1083, 1085-86 (3d Cir.1992) (involving testifying witnesses); *Miller v. Glanz*, 948 F.2d 1562, 1570-71 (10th Cir.1991) (rejecting claim for

conspiracy among testifying witnesses); *Alioto v. City of Shively,* 835 F.2d 1173, 1174 & n. 1 (6th Cir.1987) (same). Therefore, the Plaintiff's claims against these Defendants are also subject to dismissal under an immunity theory.

Additionally, the Plaintiff has failed to produce any factual evidence supporting his claims that the Defendant Sims presented false testimony regarding the Plaintiff being a flight risk or that his bond was set at $10,000 because of this testimony.

To the extent that the Plaintiff is alleging that the initial traffic stop violated his constitutional rights, the undersigned finds this claim to be without merit. The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. Amend. IV.   A traffic stop is a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653 (1979)); *see also Whren v. United States,* 517 U.S. 806, 809-10 (1996).

 First, the undersigned notes that, in his response to the Defendants' summary judgment motions, the Plaintiff states that there was no traffic stop and that he simply pulled over "on his own initiative concerned about why the unmarked law enforcement vehicle was excessively following him for so long and parked in a parking lot . . . . "  (Dkt. # 57- Pl.'s Mem. Opp. Summ. J. Mot. at 10.)  If there was not a traffic stop then logically if follows that there was not an illegal seizure based upon it.

However, even assuming there was a traffic stop, a traffic stop is constitutionally reasonable when a police officer has either "probable cause to believe that a traffic violation has occurred[,]"  *Whren v. U.S.*, 517 U.S. 806, 810 (1996), or a "reasonable articulable suspicion that criminal activity may be afoot."  *Terry*, 392 U.S. at 30 (quotation marks omitted).  In determining probable cause, the issue is not whether the Plaintiff actually made

an illegal turn, it is whether the Defendants reasonably believed that the Plaintiff made an illegal turn. *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (holding courts "need only inquire whether the officer had probable cause to believe that a traffic violation occurred, not whether [the driver] actually was tailgating."); *United States v. Smith,* 80 F.3d 215, 219 (7th Cir.1996) ( "whether [the motorist] would have been convicted of a violation in a traffic court" is not the issue). "Thus, a motorist's claim that he did not actually violate a traffic regulation cannot establish that the officer who stopped him lacked probable cause. Rather, a motorist must go further and demonstrate that the officer's belief that a violation occurred not only was incorrect, but objectively unreasonable." *Retzlaff v. City of Cumberland*, 2010 WL 1780338 * 5 (W.D.Wis. 2010).

To the extent Plaintiff is claiming negligence or improper investigation of his criminal charges, such claims are not actionable under § 1983. *See Daniels v. Williams,* 474 U.S. 327, 328-336 & n. 3 (1986); *Ruefly v. Landon,* 825 F.2d 792, 793-794 (4th Cir.1987). Therefore, the Plaintiff also fails to state a cognizable § 1983 claim against these Defendants.

**Illegal Search Claims**

The Plaintiff alleges the Defendants illegally searched the vehicle prior to his arrest. "The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Townes v. City of New York,* 176 F.3d 138, 148 (2d Cir.1999). A plaintiff may not recover for injuries flowing "from the discovery of incriminating evidence and [the] consequent criminal prosecution," but only those "directly related to the invasion of their privacy," including "where appropriate" damages for physical injury, property damage, or injury to their reputation." *Id*. In other words, a plaintiff asserting a claim of

13

unreasonable search and seizure under § 1983 "may recover damages directly related to the invasion of [his] privacy . . . but . . . cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Id.* Having reviewed the pleadings and the entire record, no such injuries have been claimed by the Plaintiff. Further, such injuries are actionable only "where appropriate," and it would not be appropriate here. There is no evidence, nor can it be reasonably inferred, that any damages resulted from the search itself. After the allegedly unlawful search, the prosecutor elected to proceed with the indictment of the Plaintiff and this provided a break in the chain between the purportedly unlawful search and the Plaintiff's prosecution, even if the prosecution could not have happened without the fruits of the search. *See Townes,* 176 F.3d at 147 (noting that even if the unlawful search was the "but for" cause of law enforcement's discovery of incriminating evidence, "the trial court's failure to suppress the evidence . . . constituted a superseding cause of Townes's conviction and imprisonment" (emphasis omitted)); *see also Wray v. City of New York,* 490 F.3d 189, 193 (2d Cir.2007) (holding that "in the absence of evidence" that the law enforcement officials had "misled or pressured the prosecution or trial judge," the chain of causation between the unlawful conduct and conviction was broken by "the ill-considered acts and decisions of the prosecutor and trial judge"). Accordingly, as the Plaintiff has not pled or proven any actionable injury based on any alleged unlawful search, this claim should be dismissed.

## CONCLUSION

14

Wherefore, based on the foregoing, it is RECOMMENDED that the Defendants' Motions for Summary Judgment (Dkt. # 27, 42 and 48) be GRANTED and the Plaintiff's Complaint be DISMISSED with prejudice.

**IT IS SO RECOMMENDED.**

s/Bruce Howe Hendricks
United States Magistrate Judge

January 4, 2011
Greenville, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**